## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**FRANK D. ADKINS,**
             **Plaintiff,**

**v.**                                          **Case No: 3:08cv429/MCR/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
             **Defendant.**

_____

### REPORT AND RECOMMENDATION

        **This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Adkins' application for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Act.**

        **Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.**

## PROCEDURAL HISTORY

Mr. Adkins filed applications for benefits claiming an onset of disability as of October 10, 1986. The applications were denied initially and on reconsideration, and Mr. Adkins requested a hearing before an administrative law judge (ALJ). A hearing was held on September 17, 2007 at which Mr. Adkins was represented by counsel and testified. The ALJ entered an unfavorable decision (tr. 21-29) following which Mr. Adkins requested review by the Appeals Council and submitted additional evidence. The Appeals Council considered the new evidence but declined review. The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).

This timely appeal followed.


## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Mr. Adkins had severe impairments of lumbar and cervical degenerative disc disease (DDD), lumbar facet syndrome, diabetes mellitus, peripheral neuropathy, gastroesophageal reflux (GERD), and obesity, but that he did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C. F. R. Part 404, Subpart P; that he had the residual functional capacity to perform the full range of light work; that he had no prior relevant work; that he was 28 years old, a younger individual with a high school education; that transferability of skills was not a relevant issue; that there were jobs in the national economy in significant numbers that he could perform; and that he was not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe impairment?

3.   Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.   Does the individual have any impairments which prevent past relevant work?

5.   Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Doughty v.*

**Apfel**, 245 F.3d 1274, 1278 (11th Cir. 2001); **Allen v. Bowen,** 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. **Doughty,** 245 F.3d at 1278 n.2; **Hale v. Bowen**, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

The thrust of Mr. Adkins' appeal is that his long-time treating physician, Dr. Richard Hooper, an orthopedic surgeon, has repeatedly opined that Mr. Adkins was and is disabled, and gave a sworn statement to that effect (tr. 318-324), yet his opinion was given little, if any, weight by the ALJ. While Mr. Adkins has other conditions, such as diabetes and GERD, his claimed disabling condition comes from 1986 when he was lifting something heavy at work and injured his back. Therefore, the following outline will be limited to a review of his back problems except where otherwise appropriate.

Dr. Hooper began treating Mr. Adkins in 1987 after a work-related injury. The administrative record does not contain medical records from Dr. Hooper prior to 1999, but in his sworn statement Dr. Hooper described the course of his treatment in general terms. Dr. Hooper's diagnosis was symptomatic degenerative disc at L5-S1 with some radicular pain. Within a short time Mr. Adkins was seeing Dr. Hooper annually. The first annual visit in the administrative record is dated December 7, 1999. Dr. Hooper noted that Mr. Adkins was complaining of neck and shoulder pain and that the previous year had been "tough year." X-rays showed some narrowing at L5-S1 with lordosis. He was given an exercise book and told to return in a year (tr. 196). On January 2, 2001 Mr. Adkins said that his year had been "a little bit better" but he was still taking Darvocet. He had no radicular symptoms. On examination he seemed in less distress, range of motion was much better, straight leg raising was negative and he moved with relative ease (tr. 191).

On January 8, 2002 Dr. Hooper noted complaints of muscle spasm but could not detect any on examination. Mr. Adkins' back was non-tender and straight leg raising was negative (tr. 182). On January 7, 2003 Mr. Adkins complained of difficulty sleeping and stiffness in the morning but no radicular symptoms. He reported a flare-up from which he "was disabled for a couple of days but then the pain subsided." (Tr. 175). There was some discomfort with extension but satisfactory flexion in the (tr. 175). On January 6, 2004 Mr. Adkins reported to Dr. Hooper that he had a flare-up when he coughed. This gave him a lot of distress for several days but he was presently in no distress. X-rays revealed minimal degenerative changes at L5-S1 with good maintenance of the disk space with normal lordosis (tr. 164). Dr. Hooper last saw Mr. Adkins on October 25, 2004. Mr. Adkins reported that he "has not been symptomatic in the last nine months." (Tr. 151). Dr. Hooper retired shortly thereafter but recommended Mr. Adkins to a Dr. Simpson for continued care (*id.*).

After Dr. Hooper's retirement Mr. Adkins was seen by Shane VerVoort, M.D., a pain management specialist, on April 5, 2005. Mr. Adkins complained of frequent aching and intermittently sharp low back pain, generally every day. Physical examination showed full range of motion in the arms and legs, and tenderness over the right paralumbar muscles. There were brief spasms with movement at the waist, but no lumbar facet tenderness. There was a small amount of loss of range of motion in the low back. Straight leg raising was negative. There was no leg atrophy and there was free range of motion in all joints. Motor and sensory tests were normal. Reflexes at the knees and ankles were absent. Mr. Adkins' gait was normal, and he could heel and toe walk and had good balance on one leg. X-rays revealed moderate degenerative changes and a 50% narrowing at L5-S1. There were no signs of radiculopathy (tr. 232-35). On September 15, 2005 Mr. Adkins told Dr. VerVoort that he had responded "extremely well" to Celebrex without side effects, that he had

discontinued Darvocet, but that he continued to have low back pain but no radicular symptoms. On September 27, 2005 Dr. VerVoort filled out a form report for Mr. Adkins' workers compensation carrier in which he indicated a "functionally normal lumbar range of motion," no neurological deficits and minimal spasms, normal grip strength and gait, the ability to squat, and heel and toe walk, and no need for an assistive device (tr. 239). Mr. Adkins next saw Dr. VerVoort two years later, on August 16, 2007, essentially unchanged (tr. 262). There is no record of further treatment by Dr. VerVoort.

## DISCUSSION

Mr. Adkins contends that the ALJ erred in failing to accept the opinion of his long-time treating physician, Dr. Hooper, in failing to obtain vocational expert testimony and in refusing to find that he had prior relevant work, and that he was disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. <u>Treating physician.</u>

Mr. Adkins first contends that the ALJ and the Appeals Council erred in giving little weight to the opinion of Dr. Hooper. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the

treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 C. F. R. § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

As noted above, Dr. Hooper opined that Mr. Adkins was totally disabled, apparently throughout the nineteen years he treated him. He reiterated that opinion during a sworn statement on taken in June 2008. Dr. Hooper stated that he although Mr. Adkins had good days, he required pain medication and muscle relaxers and had chronic pain syndrome. He explained that people with chronic pain learn to live with it and limit their activities to lessen it, but the pain is always there. He was "confident" that if Mr. Adkins had a "regular job" he would become "quite symptomatic" but was able to control his pain by controlling his activities (tr. 320-21). He further stated that people with back pain require bed rest on an intermittent basis, and that Mr. Adkins had been disabled since 1986 (tr. 322). Finally, he testified that he had reviewed the notes from subsequent treating physicians (who were not identified) and believed that "they exactly agree with my opinion," and the method of treatment was the same (tr. 323).

The ALJ gave appropriate weight to Dr. Hooper's opinion. First, a treating physician's opinion that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims. The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner. For instance, Title 20 C.F.R. §

---

[1] *MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion. *See also* Title 20 C.F.R. § 416.927(e). Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner. Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance"). Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record. SSR 96-5p. In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do *any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters. Moreover, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters. These things are not properly considered by the Commissioner in determining disability. Title 20 C.F.R. §§ 404.1566, 416.966. For

all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

The second reason for discounting Dr. Hooper's opinion, as the ALJ did, was that it was not supported by record evidence. Throughout his treatment Mr. Adkins' x-rays showed nothing more than mild DDD at only one level, and little if any radiating pain. There was no surgery. Throughout, Mr. Adkins' problems were controlled with medication.

The third reason for discounting Dr. Hooper's opinion came from the records of Dr. VerVoort, who was the most recent physician to treat Mr. Adkins' back problems. His examinations were essentially benign, and in September 2005 Dr. VerVoort reported to Mr. Adkins' workers compensation carrier that he saw no limitations at all. This is directly contrary to Dr. Hooper's testimony that follow-up physicians agreed with his opinion exactly, and casts further doubt on the quality of that opinion. There was substantial record evidence to support the ALJ's and Appeals Council's decisions not to credit Dr. Hooper's opinion, and Mr. Adkins is not entitled to reversal on this ground.

2.    <u>Vocational expert testimony.</u>

Mr. Adkins next contends that the ALJ erred in not calling a vocational expert to testify. In 1978 the Commissioner promulgated medical vocational guidelines ("grids") to help alleviate the need for vocational expert testimony to determine whether work existed in the national economy within the plaintiff's capabilities. 20 C.F.R. Part. 404, Subpart P, Appendix 2 § 200.00. "Where a plaintiff's qualifications correspond to the job requirements identified by a [grid] rule, the guidelines direct a conclusion as to whether work exists that the plaintiff could perform. If such work exists, the plaintiff is not considered disabled." *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952,1955, 76 L.Ed.2d 66 (1983). However,"where any one of the

findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case …." 20 C.F.R. Part. 404, Subpart. P, Appendix 2 § 200.00(a). Thus, each of these findings must be supported by substantial evidence.

Mr. Adkins argues that, because he had non-exertional (pain) impairments, the ALJ erred by using the grids to determine whether he was disabled. Once a claimant shows that his impairment prevents him from performing his past relevant work, the burden shifts to the Commissioner, "who must produce evidence to show that the claimant is able to perform alternative substantial gainful work that exists in the national economy." *Cowart v. Schweicker*, 662 F.2d 731, 736 (11th Cir.1981). An ALJ may use the grids to aid in determining "whether [a] claimant has the ability to adjust to other [jobs] in the national economy." *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40. The grids are:

> a series of matrices which correlate a set of variables-the claimant's residual functional capacity ( i.e., the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience. Upon the entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered.

*Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir.1985) (per curiam). "In appropriate circumstances, the grids may be used" instead of the testimony of a vocational expert to establish whether such work exists and, in turn, whether the claimant is "disabled." *Allen v. Sullivan*, 880 F.2d 1200, 1201-02 (11th Cir.1989) (per curiam). However,

> [w]hen the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills, exclusive reliance on the grids is inappropriate. In such cases, the [ALJ]'s preferred method of demonstrating that the claimant can perform other jobs is through testimony of a VE.

*Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999) (citations omitted).  Reliance on the grids is proper where substantial evidence supports the ALJ's determination that the claimant's non-exertional impairments did not significantly limit his ability to perform specified types of work.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir.1985) (per curiam).  According to the Social Security regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  To the extent that Mr. Adkins argues that the existence of non-exertional limitations precludes the use of the grids, his argument is without merit.  See *Sryock*, 764 F.2d at 836.  Instead, the question the court must answer is whether substantial evidence supports the ALJ's findings that Mr. Adkins' non-exertional impairments do not limit his ability to perform light work.  *Id.*

Substantial evidence supports the ALJ's finding that Mr. Adkins did not suffer from non-exertional limitations that significantly impaired his ability to perform light work.  The ALJ found that Mr. Adkins' subjective complaints of pain were not entirely credible (tr. 27).  He further noted Dr. VerVoort's records and their indication that Mr. Adkins had few, if any, limitations.  He also pointed to a consultative examination by Dr. Behari (concerning Mr. Adkins' diabetes) who noted that Mr. Adkins had apparently been disabled because of his back but still remained fairly active.  Finally, the ALJ noted that Mr. Adkins had chopped wood, carried shingles for roofing, and worked as a pastor, and that his physicians had persistently recommended that he exercise (*id.*).  In determining Mr. Adkins' residual functional capacity the ALJ

specifically stated that he had considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as opinions in the record (tr. 25-26). Because the clinical evidence in the record as well as the subjective statements by Dr. VerVoort provide substantial evidence that Mr. Adkins' non-exertional impairments would not significantly limit his ability to perform light, the ALJ correctly relied on the grids to determine that he was not disabled. See *Sryock*, 764 F.2d at 836. Mr. Adkins is not entitled to reversal on this ground.

### 3. Prior relevant work.

Finally, Mr. Adkins contends that the ALJ erred in finding that he had no prior relevant work. The Commissioner has confessed this error, but contends that any such error was harmless (doc. 18, p. 20). As the Commissioner states, at step four of the sequential evaluation process, the ALJ can find a plaintiff "not disabled" if he retains the residual functional capacity to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2008). In this case, the ALJ did not terminate the sequential evaluation process at step four and find Mr. Adkins "not disabled" (tr. 29). Rather, the ALJ (erroneously) found he could not perform any past relevant work because he had no past relevant work (tr. 28). The ALJ then proceeded to step five of the sequential evaluation process and determined that Mr. Adkins was "not disabled" based on application of the grids (tr. 28-29). However, the grids would direct a finding of "not disabled" regardless of whether Mr. Adkins had unskilled, skilled, or no previous work experience, and regardless of whether any skills were transferable. *See* 20 C.F.R. pt. 404, subpt. P., app. 2, Table 3, Rules 202.20, 202.21, 202.22. Consequently, a finding of no prior relevant work under these circumstances had no impact on the ultimate outcome of the case, and Mr. Adkins is not entitled to reversal on this ground.

Accordingly, it is respectfully **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 10th day of August, 2009.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636;** ***United States v. Roberts***, **858 F.2d 698, 701 (11th Cir. 1988).**